### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HARTFORD UNDERWRITERS INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) Case No. 15-CV-119-JED-PJC |
| v. | )<br>) |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, CHARLES P. DAWSON, and RYAN HODGE, | )<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

**I.    Background**

The plaintiff, Hartford Underwriters Insurance Company (Hartford), initiated this action based upon diversity jurisdiction. Charles Dawson, now deceased, was injured in an automobile accident in Kansas. At the time of the accident, Mr. Dawson was acting in the course and scope of his employment. Mr. Dawson accepted benefits under Oklahoma's workers' compensation laws. Hartford was the workers' compensation insurance carrier for Mr. Dawson's employer, and Hartford thus made payments to Mr. Dawson under Oklahoma workers' compensation law.

Mr. Dawson also sued the estate of the third party tortfeasor, in Sedgwick County, Kansas district court. Defendant Ryan Hodge is the attorney who represented Mr. Dawson in the Kansas lawsuit. On September 18, 2012, the judge in the Kansas case entered a Journal Entry of Judgment awarding Mr. Dawson a total of $688,217.93 in damages against the tortfeasor's estate. Mr. Dawson entered into a settlement agreement with the tortfeasor's estate and insurance carrier State Farm Mutual Automobile Insurance Company (State Farm), for a total payment of $100,000.00, which represented the policy limits of the tortfeasor's State Farm automobile policy.

Citing *Okla. Stat.* tit. 85, § 44, Hartford claims that it was "statutorily assigned Dawson's claim against the tortfeasor to the extent of the payments [Hartford] made for workers' compensation benefits," and that Hartford "is entitled to recoupment of its payments from Dawson pursuant to Section 44." (Doc. 2 at 3, ¶¶ 16-17).[1] Hartford has also sued Dawson's Kansas lawyer (Ryan Hodge) and State Farm, alleging that "State Farm and Hodge's distribution of the settlement funds were wrongful payments in derogation of [Hartford's] statutorily assigned interest in Dawson's settlement funds, made after [those defendants] were placed on notice of [Hartford's] interest." (*Id.* at ¶ 18).

Alleging that he has insufficient contacts with Oklahoma to confer personal jurisdiction over him in Oklahoma, Mr. Hodge seeks dismissal under Fed. R. Civ. P. 12(b)(2). (Doc. 10).

## II.     Standards Governing Personal Jurisdiction

A plaintiff bears the burden of establishing that the court has personal jurisdiction over all defendants. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, ... the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction

---

[1] Section 44 of Title 85 was repealed in 2011. A similar, but not identical, statute was codified at *Okla. Stat.* tit. 85, § 348, but was repealed effective February 1, 2014. The Oklahoma legislature then changed the statutory scheme in 2014. *See Okla. Stat.* tit. 85A, § 44. This lawsuit was not filed until March 2015. For purposes of this decision, the Court need not determine which, if any, of these statutes applied to Mr. Dawson.

2

unreasonable.'" *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. *FDIC v. Oaklawn Apts.*, 959 F.2d 170, 174 (10th Cir. 1992). If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor, and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection. *Id*.

For a court to exercise personal jurisdiction over a nonresident defendant, the plaintiff must demonstrate the existence of facts satisfying both the forum's long-arm statute and the Due Process Clause of the United States Constitution. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014). "Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co*., 839 F.2d 1415, 1416 (10th Cir. 1988)); *see Niemi*, 770 F.3d at 1348; *see also* 12 Okla. Stat. § 2004(F).

"In order to evaluate whether the exercise of personal jurisdiction comports with due process," the court "must first assess whether 'the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court there.'" *Niemi*, 770 F.3d at 1348 (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159-60 (10th Cir. 2010)). If a defendant has minimum contacts with the forum state, the court then determines "whether the exercise of personal jurisdiction over [that] defendant offends traditional notions of fair play and substantial justice." *Id.*

The minimum contacts standard may be satisfied by showing general or specific jurisdiction. *Id.* A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of

3

the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Intercon*, 205 F.3d at 1247 (quoting *Burger King*, 471 U.S. at 472). When examining specific personal jurisdiction, the courts apply slightly differing analyses in tort cases and contract cases. *See Niemi*, 770 F.3d at 1348 *(*citing *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008)). In tort cases, the courts generally apply a "purposeful direction" test, whereas a "purposeful availment" test is used in contract cases. *See id.*; *see also Dudnikov*, 514 F.3d at 1071 ("In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state"). In a tort suit, "'purposeful direction' has three elements: (a) an intentional action ... that was (b) expressly aimed at the forum state ... with (c) knowledge that the brunt of the injury would be felt in the forum state.'" *Niemi*, 770 F.3d at 1348 (quoting *Newsome v. Gallacher*, 722 F.3d 1257, 1264-65 (10th Cir. 2013)).

When a plaintiff's claim does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on a defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 & n.9 (1984). In order to exercise general jurisdiction, it must be established that the defendant's contacts with the forum are "continuous and systematic." *See id.*

### III.   Analysis

Hartford does not assert, nor has Hartford set forth a prima facie showing, that Mr. Hodge has continuous and systematic contacts with Oklahoma to satisfy general jurisdiction over him. Accordingly, the Court's analysis will focus on whether there exists specific jurisdiction.

In support of his assertion that the Court does not have personal jurisdiction over him, Mr. Hodge provided a Declaration in which he asserts, among other things, that (1) he is a citizen of Kansas, (2) he has no property, real or personal, in Oklahoma, (3) he has never done business in Oklahoma, had any employees in Oklahoma, or conducted any transactions in Oklahoma, (4) he has no office or bank accounts in Oklahoma, (5) he does not solicit business, and has never advertised in Oklahoma, (6) he never visited Oklahoma in connection with his representation of Mr. Dawson in the third-party tort action filed in Kansas, (7) he did not represent Mr. Dawson in the Oklahoma workers' compensation case, and (8) he does not pay taxes or file tax returns in Oklahoma. (Doc. 10-1).  These facts are undisputed.

In response, Hartford cites correspondence from Hartford to Hodge in which Hartford asserted that "Oklahoma rights of [workers' compensation] recovery may potentially apply to [Dawson's] pending third party claim." (Doc. 15-1).  The letter was sent from Hartford offices in Lexington, Kentucky to Mr. Hodge in Wichita, Kansas. (*See id.*).  Hartford also provided a letter from Ryan Hodge in Kansas to Hartford's attorney, Chris Harper, in Edmond. (Doc. 15-2). In the letter, Hodge attached the Kansas state court's Journal Entry of Judgment, informed Hartford that the settlement funds had been distributed, and asserted that the workers compensation benefits were non-duplicative of the third party recovery. (*Id.*).  In addition, Hartford has provided the Court with a letter from Mr. Dawson in Branson, Missouri to Hartford in Lexington, Kentucky (Doc. 15-3), and a letter from State Farm in Tulsa, Oklahoma to Dawson at an Olathe, Kansas address (Doc. 15-4).  Finally, Hartford argues that the settlement agreement (Doc. 15-5) between Dawson, the tortfeasor's estate, and State Farm establishes a basis to assert personal jurisdiction over Mr. Hodge.

Hartford has not made a prima facie showing of any facts or evidence that would render the assertion of personal jurisdiction over Mr. Hodge appropriate in this case. The undisputed record shows that Hodge owns no property in Oklahoma, does not solicit or advertise in Oklahoma, did not represent Dawson in Oklahoma or the workers' compensation proceedings, and never visited Oklahoma in connection with his representation of Dawson in the Kansas state court action. The evidence submitted by Hartford does not establish any basis for the Court to assert personal jurisdiction over Hodge, who is a Kansas lawyer who settled a personal injury claim against a tortfeasor in a Kansas court, obtained a judgment against the third party in that Kansas suit, then collected settlement funds from the third party's liability insurer in settlement of that Kansas suit. There simply is no evidence that Hodge purposefully directed his actions at Oklahoma or purposefully availed himself of the privilege of transacting business in Oklahoma. *See Niemi*, 770 F.3d at 1348; *Dudnikov*, 514 F.3d at 1071.[2]

### IV.     Conclusion

For the foregoing reasons, the Court finds an absence of personal jurisdiction over defendant, Ryan Hodge, and Mr. Hodge's motion to dismiss (Doc. 10) is hereby **granted**. Mr. Hodge is hereby **dismissed** and terminated as a party, as the Court lacks personal jurisdiction over him.

SO ORDERED this 20th day of January, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[2]     Even were the Court to find that there was any evidence supporting the exercise of specific personal jurisdiction over Mr. Hodge (which there is not), the alleged jurisdictional facts are so weak that the exercise of personal jurisdiction over Mr. Hodge would offend traditional notions of fair play and substantial justice. *See Niemi*, 770 F.3d at 1348.